how many who are now members of that order violate it, is sufficient ground for their rejection. This applicant, then, having deliberately infringed that Constitution which, if admitted, his oath binds him to support and defend, it cannot be gainsaid that his petition should be denied.

Let an order be entered denying the petition, without prejudice, however, to the right of the petitioner to file again, when such time shall have elapsed as that he can show a probation period of five years, during which he has not deviated from, nor shown his disregard of, the principles of our Constitution.

---

### In re RAIO.

(District Court, S. D. Texas, at Houston. December 11, 1924.)

No. 2642.

Aliens ⊂⊃62—Alien, convicted, of illegal possession of liquor during period of probation, not eligible to citizenship.

Prohibition being now a "principle of the Constitution," conviction of violation of the statute for its enforcement by an alien within five years before his application for naturalization, though only for possession of illicit liquor for personal use, stands on a different ground from other statutory misdemeanors, and bars his admission to citizenship.

Petition by Carlo Raio for naturalization. Denied.

Walter Wheatley, Naturalization Examiner, of Houston, Tex., for the United States.

HUTCHESON, District Judge. This application for citizenship is opposed by the examiner on the ground of violation of the Volstead Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). In the Nagy Case, 3 F.(2d) 77, this day decided, I have discussed the question in its general aspects. This petitioner, however, asserts that, since he was not charged with manufacture or sale, but was only charged with having some illicit liquor in his possession for the purpose of personal consumption, as he claims, it is "tithing mint, anise, and cummin," and "sticking in the bark," to refuse him citizenship, when, as he avers, not thousands, but thousands upon thousands, of "the best people" in the United States are notoriously indulging themselves in the unlawful possession of liquor, and he asserts, further, that this offense of his, which is a misdemeanor punishable only by fine, ought to be analogized to other minor offenses, such as those against the traffic laws, etc., so as to constitute no impediment to his entrance.

The petitioner asserts that this court has admitted applicants, although it has appeared that during their five years' probation they have been arrested for violation of the traffic laws, for engaging in fistic encounters, etc., and that there can be no soundness in the distinction between a liquor misdemeanor and a traffic misdemeanor. It may be true that a casuist, or a metaphysician, viewing crimes broadly, or a Mikado, whose "object all sublime, he would achieve in time, to make the punishment fit the crime, the punishment fit the crime," could not point to any reasonable difference between these offenses, as to the penalty to be imposed, or the consequences to follow, there is certainly no difference in morals, since both are mala prohibita, and in no sense mala in se, and neither carries with it any moral odium, except that which abstractly attends the breaking of any positive law.

If I were inclined to draw a distinction between the measure of guilty reprobation involved in breaking traffic laws and that involved in breaking the noncommercial features of the Volstead Act, by a comparison of the ease and apparent facility with which our good citizens accomplish both, I would be hard put to it to determine which law is less regarded, for, although there were in this city something like 50,000 traffic arrests during the year, and less than 1,000 Volstead arrests, it is common experience that the number of violations of offenses of a personal or social nature, which do not hunt public places for their commission, as traffic offenses must, cannot by any means be measured by the arrests for them. As between fistic encounters and Volstead violations, I might place the distinction upon the grounds that "millions for defense" applies in this country in a just cause to personal as well as national controversies, and that the ability to defend by sound, round blows is an Anglo-Saxon right, which ought not lightly to be taken away.

It is not necessary, however, to resort for the determination of this case against the applicant to any of these considerations. The law governing naturalization points the plain way for me to follow. Neither traffic laws, nor laws concerning breaches of the peace through fistic encounters, rest upon or are embodied in the Constitution of the United States. The Prohibition Amendment is an integral of that Constitution, and if I follow the law, both literally and upon its reason, I cannot hold that one who, during his probationary period, has deliberate-

ly violated that Constitution, and been convicted for such violation in a court provided for its interpretation, has shown himself so attached to its principles as that I should admit him.

It might be that in a case of this kind, where such clear and convincing evidence was presented that the offense was sporadic, and of such character as that it did not furnish an index to the offender's mind toward the Constitution, but that it was merely a lapse or fall from grace through the influence of original sin, that I ought to hold otherwise. I have no judicial power, however, to read the minds or consciences of men. I can only judge of these by their actions, and nothing connected with the charges in this case in any way supply that overwhelming measure of proof needed to rebut the inferences arising from the conviction.

The applicant, having elected during his probationary period to violate the Constitution, must stand without .its pale, until, in accordance with its (not his) terms the gates are opened to him, and he is allowed to enter the promised land.

## In re PHILLIPS.

(District Court, S. D. Texas, at Houston. December 11, 1924.)

### No. 2854.

Aliens ⊚⇒62—Conviction of illegal possession of a still held to bar admission to citizenship.

Conviction of an alien of illegal possession of a still, which is made a specific offense by the Prohibition Act, during the five years before his application for naturalization, *held* to bar his admission to citizenship, though he manufactured no liquor.

Petition by George Phillips for naturalization. Denied.

Walter Wheatley, Naturalization Examiner, of Houston, Tex., for the United States.

HUTCHESON, District Judge. This case is the same as In re Nagy, just decided, 3 F.(2d) 77, except that in the Nagy Case petitioner had been convicted of the manufacture of liquor. In this case the offense was the unlawful possession of a still. This offense the Volstead Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) denounces as a misdemeanor, and for its violation a fine may be imposed of from $100 to $500.

The petitioner naively declared that he had not .made any whisky; that he had tried to, but all he got out of his experiment was a little "wormy water"; and he therefore asserted with much vehemence that he ought not to be denied his citizenship, since his efforts at law violation had proved abortive. I am not prepared to concede that the failure to commit an offense because of insufficient ability or preparation would advantage an applicant for his "accolade," since it is the man's heart and intent which is here searched, rather than his achievements. But it is not necessary for me to so decide, since the law makes the possession of a still, without manufacture, a specific offense.

This being so, the case falls in principle directly within that of Nagy, and the same order will be entered.

## THE LIBBY MAINE.

(District Court, W. D. Washington, N. D. November 8, 1924.)

### No. 8010.

1. Collision ⊚⇒71(3)—Anchorage of log raft, in harbor without written permit not a bar to recovery of damages.

The mere fact of anchorage of a log raft in a harbor without a written permit *held* not a bar to the recovery of damages for a collision, which was the result of the negligence of another.

2. Collision ⊚⇒81—A log raft is a "vessel," subject to the rules as to fog signals.

A log raft is a "vessel," and subject to Inland Rules, art. 15 (Comp. St. § 7888), as to fog signals.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Vessel.]

3. Collision ⊚⇒82(2)—Vessel entering harbor in fog held in fault for collision with anchored flotilla of logs.

A motor ship, entering a harbor in a fog, *held* in fault for collision. with an anchored flotilla of log rafts, for negligent navigation and excessive speed.

In Admiralty. Suit for collision by George Pankratz against the motor ship Libby Maine, her engines, etc. Decree dividing damages.

On the afternoon of October 10, 1923, a flotilla of six or seven rafts of logs, made fast to each other, was anchored in Seattle harbor just off the fairway, in anchorage ground designated by city ordinance. Lights were placed upon the rafts. During the night a very dense fog arose, and in this